## LOCKE *v.* SMITH.

If a minor be emancipated at fourteen, and he afterward agree to pay for necessaries which he had received before he was fourteen, and which had been furnished him on his father's account, and for which he was not liable, such contract is voidable on the ground of infancy.

An infant may bind himself to pay for necessaries he obtains, so much as they are reasonably worth, but not what he may foolishly have agreed to pay for them.

Where a contract with an infant is executed, and the consideration has passed on both sides, he cannot, on coming of age, repudiate his contract without returning the consideration he has received ; or, where that cannot be done, he must place the other party in as good a position as though he had returned it, before he can recover back the consideration that has passed from him.

INDEBITATUS ASSUMPSIT, for the labor and services of the plaintiff during five and a half years of his minority,—to wit, from the age of fourteen to that of nineteen and a half years,—and a *quantum meruit* for the same services.

On trial, it appeared that when the plaintiff was four years old, his father, by a parol agreement, placed him to live with the defendant until he should arrive at the age of fourteen years, upon an express agreement between his father and the defendant that nothing should be charged

Locke *v.* Smith.

by either party during that period; after which the plaintiff was at liberty to go or remain, as he chose, without interference by his father. There was some evidence offered by the defendant tending to show that the parol agreement of the plaintiff's father, and the express agreement between him and the defendant, as to there being no charges either way between them, extended to the whole period of the plaintiff's minority during which he should continue to live with the defendant voluntarily; and that the plaintiff lived with the defendant from the age of four to nineteen and a half years, with an understanding or expectation on his part that his services during his entire minority were to go to compensate the defendant for the expense of his support and education, and that nothing was to be received by him for those services other than such support and education.

The defendant asked the court to instruct the jury, that, if the plaintiff rendered the services for the defendant for which he now sought compensation, with an understanding or agreement on his part that the value of those services should go to compensate the defendant for the expense of his support prior to his arrival at the age of fourteen, and that nothing should be received by him for them, such understanding or agreement would be binding on the plaintiff, although a minor, and he could now recover nothing for those services; and also, that the plaintiff, being emancipated, or having his time and earnings released to him by his father, had a right to contract and pay for his own support and maintenance; and if, after he arrived at the age of fourteen, or to a period when his services were of value over and above his support, he agreed to live and render services in the defendant's family to pay for his previous support, and, such being the understanding of both parties, did thus live and render services, he could now recover nothing for those services, however valuable they might have been to the defendant.

The court being of opinion that the agreement of the defendant with the plaintiff's father was conclusive against his right to receive compensation from the plaintiff for his support prior to arriving at the age of fourteen, declined to give to the jury the instructions asked; but did instruct them that if they found, upon the evidence, that the services of the plaintiff for the defendant, during the period for which compensation was sought to be recovered, were worth more to the defendant than the value of the plaintiff's support, clothing, education, and whatever else he had received therefor, the plaintiff might recover in this action whatever he reasonably deserved to have for the difference between the value of his services to the defendant, and the value of whatever he had received of the defendant in his support, clothing, education, and otherwise, for those services, without regard to the period before he was fourteen years of age,—the only question for the jury to determine being, what was the value to the defendant of the plaintiff's services during the period for which he sought compensation, over and above what the plaintiff had received of the defendant therefor, if any thing.

The jury having returned a verdict for the plaintiff, upon which judgment was rendered, the defendant filed this bill of exceptions, which was allowed by the court.

*Tappan & Hazelton*, for the defendant.

*Flint & Bryant*, for the plaintiff.

SARGENT, J. The Revised Statutes (ch. 151, sec. 1; Comp. Stat. 390) provide that "Children under the age of fourteen years may be bound as apprentices or servants until that age, without their consent, by their father, if living," &c.

Section 2 provides that "Minors above the age of fourteen years may be bound, with their consent, by their father, or, after his decease by their mother or guardian, as

apprentices or servants"—"males to the age of twenty-one years; and the consent of such minor shall be distinctly expressed on the indenture, and testified by his signing the same."

Section 3 provides that "No minor shall be bound as aforesaid, except by an indenture in two parts, signed, sealed, and delivered by both parties."

Section 5 makes such indentures, when thus executed, binding upon all the parties.

Although this statute provides that minors over fourteen shall not be bound as apprentices or servants without their consent, yet, whether they consent or not, it does not alter their status or condition. If the minor does not consent, there is nothing here that changes the relation in which he stands to his father, nothing that emancipates the minor; and though the father may not be allowed to bind the son under these circumstances, without his consent, yet he is in no way deprived of the general right of control over him, or the right to claim and receive the wages of such son during his minority.

The defendant claims that the plaintiff was the adopted son of the defendant, but there is no evidence reported in the case that tends to show it. All the evidence tends to show that the relation between them was that of master and servant.

The plaintiff assumes that he was emancipated, but there are no facts stated in the case that warrant any such assumption. To be sure, the defendant assumes the same fact in asking for instructions; but that is not only not conclusive, but it is not uncommon for a party to ask for instructions based upon any and every possible aspect of the case, without any intention on his part to admit that either one or another of those positions is true, but leaving all the facts for the jury to pass upon. So here, while he asks for certain instructions as to what the law would be if the jury should find that the plaintiff was emancipated,

he also evidently intended to reserve to himself the right to have the jury pass upon that fact, by his taking exceptions to the rulings that were made. The instructions given assume the fact that the plaintiff was emancipated; and to these instructions the defendant excepted generally, thereby raising all the questions that legitimately can be raised upon them, the most important and material of which evidently was the question of emancipation.

The evidence introduced by the defendant tended strongly to show that the plaintiff was not emancipated at fourteen, and that his father had no such intention or purpose; because, had that been otherwise, he would not have been making contracts in relation to the son after he was fourteen. The fact that it was agreed between all the parties that the plaintiff might remain or leave, when he arrived at fourteen, as he chose, without the interference of the father, would be by no means sufficient to show that the son was to be then emancipated. Up to that age the father might bind the son, as he did, whether the son consented or not, but after that age the father could only bind him with his consent; and the fact that the son should not thus consent would not in any way affect the father's right to his services in some other place, or to claim and receive his earnings wherever the child should choose to go, or wherever the father should choose to let him labor for wages;—so that this evidence may in fact have had but a very slight tendency to prove the fact of emancipation. The father may have agreed to let the son do as he pleased in this respect, without interference on his part; without any intention, should the son choose to go away, of relinquishing his claim to his services or earnings.

Indeed, if we consider all the circumstances in the case, the probabilities may be against the fact of emancipation. If the father was disposed to get the most money he could for himself out of the earnings of the son, he might not,

on the one hand, have made the bargain which the defendant's evidence tends to show he made, that the son should remain with the defendant if he chose till he was of age, without any other pay than what the son himself might receive. But, on the other hand, if this were the father's motive, he would certainly be equally unwilling to emancipate the son at fourteen, and thus give up all claim he had to the very wages and earnings which he was seeking to obtain for his own use.

But, if the father was looking merely to the interests and welfare of the son, it would be by no means certain that he might not as well arrange that the son should remain in one place and labor during his whole minority—should the son consent, in consideration of the advantages he might receive in acquiring an education, and in fitting for business and usefulness in life—as to emancipate him at the age of fourteen, and let him contract for and take care of himself, and run wherever his inclinations should carry him. This must depend considerably upon the kind of place the son had, and the advantages he was to receive.

The first question to settle is, what were the father's intentions in relation to the son, and what were his acts in carrying out those intentions? Was it the intention of the father that the son should be emancipated at fourteen, so that he should not only have the right to stay with or leave the defendant at that age (a right which the law gave him, whether emancipated or not), but was he to be entitled to his own time and wages after that period, with the right to trade and act for himself; and was it the father's intention to relinquish all claim and right of claim to his services and wages after that age; and were those intentions not only entertained by the father, but were they expressed, stated, and understood by all the parties; and was that the contract made between the three, that the plaintiff was to live with the defendant on the terms stated, till he was fourteen; that then he should be emancipated, and have

the right, not only to go from or remain with the defendant, but the right to control his own actions, receive his own wages, and make his own contracts, independent of his father, having the right to go or stay, as he pleased; and if he went, to go where, when, and upon what terms he pleased; and if he stayed, to fix and agree upon the terms on which he should remain; and were those intentions carried out on the part of the father, and did he thus emancipate his son?

If this fact should be found affirmatively, then we think the ruling of the court below was well enough; for in such case, the father having made provision for him until he should be fourteen, the child could not well be made liable for the necessaries during that time for which his father had in that way provided and paid; and if the son afterward undertook to promise to pay the defendant any thing for those necessaries, he would not be bound by that promise, for the double reason that it was without consideration, as well as having been made during infancy, and not for necessaries furnished to him.

But, before the jury could find this fact affirmatively, they must find either that the evidence introduced by the defendant was not true, or, if true, that the father was transcending his powers; because, if the child was emancipated at fourteen, the father had no right to make any contract for him after that age; and if he agreed with the defendant that his son should remain with him after that age, without any other compensation than his board, &c., no such bargain would bind the son; nor could the assent of the son make any difference, because, if assented to by the son so as to make it his contract, the law does not hold him bound by it, on the ground of infancy. He is only bound to pay for necessaries what they are worth, not what he may foolishly have agreed to pay. So that the instructions asked for by the defendant were properly refused, in any view.

Locke *v.* Smith.

But the evidence introduced by the defendant was clearly competent, as tending to show that the plaintiff was not emancipated, and should have been submitted to the jury upon that point, as by the ruling of the court it was not; and if the jury had found that the contract was as the defendant claimed, and that the plaintiff was not emancipated, as the defendant's evidence tended to show, then, although the father could not bind the son to stay with the defendant after he was fourteen, without his consent, yet he might properly agree that, if the son did thus consent to stay, his services while he stayed, even if it were during his whole minority, should go in offset for the son's board, clothing, and education; and if this was the agreement, then the father could not recover any thing for those services; nor could the son, because, if not emancipated, he had no right to those services, and cannot maintain this suit.

One other point made by the defendant will be alluded to. It is claimed by him that if it was understood and agreed between the plaintiff and the defendant that he should labor for his board, &c., even though the plaintiff were emancipated, yet that, having received the board, clothing, &c., on the one hand, and performed the services on the other, the contract is executed, and cannot be rescinded or avoided by the infant, and the consideration he has paid be recovered back, unless he first returns the articles, property, or advantages he has received; and that, as this cannot from the nature of the case be done, the contract cannot be avoided so as to allow the plaintiff to recover any thing for such services.

The infant cannot repudiate the contract so as to recover pay for his labor and allow nothing for the board; but if he would avoid the contract he must put the other party in as good a position as though he restored the consideration he had received, by allowing to the defendant whatever the board, &c., was worth to him, while he is to allow

the plaintiff only what his services were worth to the defendant more than the board; which is, in fact, carrying out the principle laid down in *Carr* v. *Clough,* 26 N. H. 280. The instructions of the court below on this point were correct.

Unless the fact of emancipation was conceded on the trial, which we judge, both from the case and the course of the arguments, was not the case, then that question must be first settled. That question settled one way, decides the case in favor of the defendant; settled the other way, if all the other facts remain the same as upon the other trial, with the view we have taken of the law, it will substantially give the case to the plaintiff. It is evident from the case before us, not only that it could not be assumed as matter of law that the plaintiff was emancipated, but, from the evidence stated, it would seem to be a matter of doubt whether the jury would have so found the fact if the question had been submitted to them.

In settling that fact, the question may arise as to what acts a father must do, as well as what intentions he must have entertained, in order to emancipate his son, and when those acts must be performed; but those questions are not now raised.

The exceptions are sustained, the judgment is reversed, the verdict set aside, and

*A new trial granted.*